UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

|  |  |  |
|---|---|---|
| ZIAULHAQ SHINWARI, | ) ) ) | |
| Petitioner, | ) ) | |
| v. | ) ) | Civil No. 25-12021-LTS |
| PATRICIA HYDE et al., | ) ) ) | |
| Respondents. | ) ) ) | |

ORDER ON AMENDED PETITION FOR WRIT OF HABEAS CORPUS
AND REQUEST FOR INJUNCTIVE RELIEF (DOC. NO. 19-2)

October 3, 2025

SOROKIN, J.

Ziaulhaq Shinwari, a citizen of Afghanistan who is presently in immigration detention, filed and then amended a petition for a writ of habeas corpus under 28 U.S.C. § 2241. Doc. Nos. 1, 19-2. He seeks an order requiring his immediate release and other relief the Court will address as necessary below. In several recent cases, the Court has considered and resolved the legal question that governs the portion of Shinwari's petition that falls within the limited scope of federal habeas review in the immigration context. The same reasoning leads the Court to ALLOW the amended petition to the extent described herein.

Shinwari assisted the United States Armed Forces as an interpreter working with troops stationed in Afghanistan from about 2005 to 2009. Doc. No. 19-2 ¶ 16. He fled Afghanistan in 2021 when the Taliban came to power, fearing for his safety due to his prior relationship with the U.S. military. Id. ¶¶ 17–20. Initially, Shinwari traveled to Pakistan, where he sought approval for a special immigrant visa available to certain individuals who served the U.S. military as

interpreters. Id. ¶ 18. Meanwhile, Shinwari's brother—also a former interpreter, and already settled lawfully in Connecticut—petitioned on his behalf for humanitarian parole. Id. ¶ 19. United States Citizenship and Immigration Services ("USCIS") approved the petition filed by Shinwari's brother and issued a document granting Shinwari advance parole, authorizing him to travel to and enter this country. Id. ¶¶ 20–21; see Doc. No. 1-2. After he received this approval, Shinwari flew to New York City with his wife and five children on October 8, 2024, and the family was paroled into the country for a period of two years. Doc. No. 19-2 ¶¶ 24, 32. They moved to Connecticut to join Shinwari's brother, the children began attending school, and Shinwari (his family's "sole means of support") found work. Id. ¶¶ 26, 28. Nothing before the Court suggests Shinwari has a criminal record.

In May 2025, more than seven months after Shinwari arrived in the United States, officers with Immigration and Customs Enforcement ("ICE") serving on a Joint Terrorism Task Force learned that the FBI had received a tip suggesting Shinwari posed a threat to national security. Id. ¶ 33. The record before the Court establishes that, upon receiving this information, the Department of Homeland Security ("DHS") issued a warrant for Shinwari's arrest. Doc. No. 34-2 at 92. The warrant expressly invokes 8 U.S.C. § 1226 as authorizing the arrest. Id. (citing section 236 of the Immigration and Nationality Act).

Unaware of the tip or the arrest warrant, Shinwari applied in June 2025 to adjust his status to that of a lawful permanent resident ("LPR"). Doc. No. 19-2 ¶ 35. Shinwari appeared as scheduled for fingerprinting "at a biometrics facility"—a necessary step in support of his LPR application—on July 16, 2025. Id. ¶ 36. As he left the building after the appointment, he was arrested by ICE officers. Id. ¶¶ 37–38. Following his arrest, Shinwari received a Notice and

Order of Expedited Removal, and he was placed in immigration detention. Id. ¶¶ 38–39. He subsequently received formal notice that his humanitarian parole had been revoked. Id. ¶ 40.

The day after his arrest, Shinwari instituted this action by filing a habeas petition alleging that his detention violated his right to due process. Doc. No. 1 ¶¶ 13–14. He sought an order nullifying the expedited removal order and requiring his release. Id. at Prayer for Relief. The respondents answered the original petition on July 25, 2025, defending the lawfulness of Shinwari's detention pursuant to the statute governing expedited removal. See Doc. No. 8 (relying on 8 U.S.C. § 1225). The answer was accompanied by a declaration from ICE Acting Deputy Field Office Director John Charpentier. Doc. No. 8-1. Charpentier, who signed the letter revoking Shinwari's parole, represented that Shinwari was detained under § 1225(b)(1) and described the circumstances leading to his arrest and parole revocation. Id. ¶¶ 5, 9–13.

Soon thereafter, Shinwari's immigration status evolved. Because he expressed fear for his safety if returned to Afghanistan (a concern linked to his service as an interpreter for American troops), DHS canceled the expedited removal order and initiated traditional removal proceedings by issuing a Notice to Appear on August 5, 2025. Doc. No. 19-2 ¶¶ 44, 48. After learning of this change, Shinwari filed the amended petition now before the Court. He alleges violations of his due process rights and the Administrative Procedure Act. Id. ¶¶ 67–83.

Before the respondents' deadline to answer the amended petition, Shinwari asked the Court to stay these proceedings so he could seek a bond hearing in immigration court, given the cancellation of the expedited removal order. Doc. No. 23. The Court granted his request. Doc. No. 24. On September 22, 2025, Shinwari notified the Court that his quest for bond had not succeeded, as the immigration judge ("IJ") assigned to his case had determined that a recent decision by the Board of Immigration Appeals required the IJ to treat Shinwari as subject to

mandatory detention under § 1225(b) even absent expedited removal.  See Doc. No. 26.  In the same status report, Shinwari also suggested DHS had abandoned its reliance on the FBI's security-threat tip as a basis for detention or removal.  Id.

The Court scheduled a status conference with the parties to determine how best to proceed in this action.  Doc. No. 27.  During the conference, the respondents made clear that they had neither abandoned nor finished investigating the information the FBI had received about Shinwari.  They also confirmed that Shinwari's LPR application remained under consideration by USCIS, and that his pending asylum claim would proceed before the IJ in the event he was not granted LPR status in the relatively near future.  As to the merits of the petition, the Court had a colloquy with the respondents' counsel about the extent to which Shinwari's due process claim echoes those raised in a series of other cases that recently required the Court to analyze which of two relevant immigration-detention statutes applies.  See, e.g., Order, Garcia v. Hyde, No. 25-cv-11513-LTS (D. Mass. July 14, 2025), ECF No. 21.  Counsel respectfully disagreed with the Court's analysis,[1] urged the Court to find it lacks jurisdiction,[2] and posited that the facts here distinguish Shinwari from the petitioners in the other similar cases the Court has decided recently.  The distinctions identified by the respondents included the existence of the FBI tip and the fact that Shinwari arrived in the United States less than a year before he was arrested.

---

[1] The disagreement was expressed only generally, though, without any developed legal argument.  This is understandable, as the parties appeared for a status conference and not a motion or merits hearing.  The respondents' legal position has been developed in other cases, so the Court is familiar with it.

[2] The Court agrees with the respondents insofar as they argue it lacks jurisdiction to review the revocation of Shinwari's parole; the decision to invoke the expedited removal process in the first instance; the decision to cancel that process and initiate traditional removal proceedings after Shinwari claimed a fear of returning to Afghanistan; or the effect (if any) of the information provided by the FBI on Shinwari's LPR application, asylum claim, or bond determination.  Those questions appear to fall beyond this Court's circumscribed habeas jurisdiction in the immigration context.

At the conclusion of the status conference, the Court took the matter under advisement. Promptly thereafter, it ordered the respondents to file various documents related to Shinwari's immigration status, as well as documents forming the basis of the respondents' description of the tip received by the FBI and conveyed to ICE. Doc. No. 33. The former category of documents was filed under seal, and the latter both under seal and ex parte.[3] Doc. Nos. 34, 36. After reviewing these documents alongside the parties' previous submissions, the Court is prepared to rule on the amended petition without further briefing or argument.

The primary claim advanced by Shinwari that is properly explored in an action such as this one is a due process challenge to the respondents' decision to detain him without affording him a bond hearing. That claim turns on whether he is subject to mandatory detention under § 1225(b) or is instead detained pursuant to § 1226, which permits discretionary release by an IJ. Viewed through this lens, Shinwari's amended petition asserts that his detention violates federal law. Such a claim is within this Court's habeas jurisdiction. To resolve it, the Court will adhere to its prior reasoning which, like that articulated by various other federal judges here and elsewhere, squarely rejects the respondents' legal position. See, e.g., Oliveira Gomes v. Hyde, No. 25-cv-11571-JEK, 2025 WL 1869299 (D. Mass. July 7, 2025) (slip copy). The Court has concluded previously, and remains persuaded now, that Judge Kobick's analysis of the relevant statutory language in Oliveira Gomes is correct. See also Sampiao v. Hyde, No. 25-cv-11981-JEK, 2025 WL 2607924, at *8 n.11 (D. Mass. Sept. 9, 2025) (considering and disagreeing with

---

[3] There are two subcategories of documents which the respondents were unable to collect by the deadline the Court set, leading them to seek an extension as to those items. Doc. No. 35. Having reviewed the substantial submissions they did timely make, and having reflected on the arguments before the Court in writing and as developed during the status conference, the Court hereby EXCUSES the respondents from producing the remaining items and, accordingly, DENIES their motion to extend (Doc. No. 35) as MOOT.

recent BIA decision adopting respondents' view); Romero v. Hyde, No. 25-cv-11631-BEM, 2025 WL 2403827, at *1 (D. Mass. Aug. 19, 2025) (noting government's position "would require the mandatory detention of hundreds of thousands . . . of individuals currently residing within the United States," and collecting cases rejecting the position). For the reasons articulated in detail by Judge Kobick and the various other federal judges who have reached the same conclusion, the Court finds that Shinwari is not subject to mandatory detention under § 1225(b).[4] His continuing detention without application of § 1226 and access to a bond hearing as described therein violates his rights under the Fifth Amendment's Due Process Clause.[5]

      The factual distinctions to which the respondents alluded during the status conference do not materially alter the Court's analysis. Shinwari alleges he relocated to the United States with advance permission and was paroled into the country along with his entire immediate family. He has joined extended family here, secured housing, enrolled his children in school, and found work. He has applied for permission to remain here permanently. The respondents have not called into question any of these allegations. That Shinwari had spent less than a year in this country at the time of his arrest does not undermine the ties he alleges he established here, nor does it in any other way reduce his entitlement to due process.[6] Cf. Dep't of Homeland Sec. v. Thuraissigiam, 591 U.S. 103, 107 (2020) (acknowledging that noncitizens "who have established

---

[4] This conclusion is consistent with DHS's own view at the time of Shinwari's arrest. See Doc. No. 34-2 at 86 (documenting July 16, 2025, assessment that Shinwari was "[n]ot subject to mandatory detention per statutes and allegations").

[5] Because this determination alone warrants allowing his petition, the Court does not analyze his APA claim, including whether he may bring such a claim in this Court. The Court notes that the petitioner has not identified legal authority for his suggestion that the pendency of his LPR application somehow impairs DHS's ability to pursue removal or gives rise to a separate claim over which this Court has jurisdiction.

[6] The seeds of Shinwari's connection to the United States were arguably planted decades ago, when he spent years assisting American troops stationed in his home country. See Doc. No. 1-4.

connections in this country have due process rights in deportation proceedings"). As far as the FBI tip is concerned, the respondents have not argued, let alone shown, that the information provided to ICE justifies Shinwari's mandatory detention pursuant a statute other than § 1225(b). See generally Doc. No. 9. To the extent further investigation leads any of the involved agencies to conclude that the tip supplies a basis to deny Shinwari relief he is seeking from USCIS or in immigration court, that is a matter for consideration by the relevant agencies. It is not within the jurisdiction of this Court, nor does it compel a different result on the dispositive legal question properly presented by Shinwari's habeas petition and developed by the parties here.

Accordingly, it is hereby ORDERED that the amended petition (Doc. No. 19-2) is ALLOWED to the following extent: 1) the respondents shall provide Shinwari with a bond hearing under 8 U.S.C. § 1226(a) within seven days of this Order;[7] 2) the respondents shall not oppose or deny bond to Shinwari on the basis that he is detained pursuant to 8 U.S.C. § 1225(b)(2); and 3) the respondents shall not retaliate against Shinwari in the context of the bond hearing or otherwise for his filing of this federal habeas petition.

SO ORDERED.

  /s/ Leo T. Sorokin
United States District Judge

---

[7] At the hearing, consistent with the statute and its implementing regulations, the government will have the burden of either proving by clear and convincing evidence that Shinwari poses a danger to the community, or proving by a preponderance of the evidence that he is a flight risk, or (if applicable) establishing that he is subject to mandatory detention under § 1226(c). See Oliveira Gomes, 2025 WL 1869299, at *8.