UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSSETS
Boston, Massachusetts

| | |
|---|---|
| ZIAULHAQ SHINWARI, <br><br>    Petitioner, <br><br>v. <br><br>PATRICIA HYDE, Field Office Director, *et al.*, <br><br>    Respondents. | Hon. Leo T. Sorokin <br><br>Case No. 1:25-cv-12021-LTS <br><br>October 15, 2025 |

## MOTION FOR RECONSIDERATION OF THE ORDER GRANTING PETITIONER'S AMENDED PETITION FOR WRIT OF HABEAS CORPUS AND REQUEST FOR INJUNCTIVE RELIEF

Pursuant to Federal Rule of Civil Procedure 59(e), Respondents Patricia Hyde, Field Office Director, et al., hereby seek reconsideration of the Order on Amended Petition for Writ of Habeas Corpus and Request for Injunctive Relief. (Doc. No. 37).[1] Respondents also respectfully request, pending an end to the present lapse in appropriations, a stay of any additional briefing the Court may order as a result of this motion.

**Argument**

Under Rule 59(e), "relief is granted sparingly, and only when 'the original judgment evidenced a manifest error of law, if there is newly discovered evidence, or in certain other narrow situations.'" *Dias v. Saul,* No. 18-cv-10280-ADB, 2019 WL 13104455, *1 (D. Mass. Dec. 6, 2019)

---

[1] On October 9, 2025, Respondents complied with the Court's order to provide Petitioner with a bond hearing pursuant to 8 U.S.C. § 1226(a), in which the government did not argue that Petitioner was subject to mandatory detention pursuant to 8 U.S.C. § 1225(b). However, Respondents believe, for the reasons expressed herein, the Court should reverse the order to allow Respondents the opportunity to brief the issues the Court relied on in reaching its decision.

1

(quoting *Biltcliffe v. CitiMortgage, Inc.*, 772 F.3d 925, 930 (1st Cir. 2014)). A motion under Rule 59(e) "does not provide a second-chance for litigation, but rather aims to correct an error by the court without the additional burden of initiating appellate review." *Trinidad v. City of Boston*, 2011 WL 915338, at *3 (D. Mass. 2011); *see Dias,* 2019 WL 13104455 at *1 ("a motion for reconsideration should be granted if the court 'has patently misunderstood a party . . . or has made an error not of reasoning but apprehension.'") (quoting *Ruiz Rivera v. Pfizer Pharm., LLC,* 521 F.3d 76, 82 (1st Cir. 2008)).

Here, the Court erred by ruling on the merits of a proposed amended habeas petition that the Court had not yet granted leave for Petitioner to file; and for which the Court acknowledges Respondents had no opportunity to present a "developed legal argument" in opposition. In ruling on the proposed amended petition, the Court ignored a core element in Respondents' oral argument—that this case is distinguished by Petitioner's entry under, and revocation of, humanitarian parole pursuant to 8 U.S.C. § 1182(d)(5)—and instead ascribed a different argument to the government that it then rejected. The Court clearly erred in its apprehension of the government's position, and the Court's reliance on this misapprehension to rule Petitioner is entitled to a bond hearing prejudiced Respondents.

To begin with, the Court incorrectly described the procedural posture of the case, noting that Petitioner's amended habeas petition was pending before the Court, that Respondents had a deadline to respond to it, and that the deadline had not yet passed. *See* Order at 3. Petitioner filed a motion for leave to amend his habeas petition because the deadline to file an amended petition as of right had already passed. *See* Petitioner's Motion for Leave to File First Amended Complaint, ECF No. 19; Petitioner's Memorandum in Support of Motion for Leave to File First Amended Complaint, ECF No. 20. This is a prejudicial error because Respondents reasonably believed that

the status conference would result in the Court either denying Petitioner's petition based on Respondents' opposition [ECF No. 8] or granting Petitioner leave to file his amended petition. Respondents did not anticipate a ruling on the merits of new claims raised after the operative petition that Respondents had no opportunity to oppose in briefing. *See* Order at 4 n.1 ("the parties appeared for a status conference and not a motion or merits hearing."). But the Court "allowed" the amended petition and ruled on the merits, granting Petitioner a bond hearing—a form of relief he did not seek in either his original habeas petition or the proposed amended petition. In any event, Respondents had no opportunity to properly argue why Petitioner was detained pursuant to 8 U.S.C. § 1225(b) and not entitled to a bond hearing. *See* Order at 4 ("As to the merits of the petition, the Court had a colloquy with the respondents' counsel about the extent to which Shinwari's due process claim echoes those raised in a series of other cases that recently required the Court to analyze which of two relevant immigration-detention statutes applies.").

The Court acknowledged that Respondents were "understandably" unable to present a "developed legal argument" on the Court's unprompted questions, but found it was sufficient to consider arguments the government has made "in other cases." Order at 4 n.3 ("so the Court is familiar with it."). But this determination led to the second prejudicial error in the Court's order. Respondents argued at the status conference that this case is distinguishable from other cases in the District of Massachusetts that the Court is familiar with, such that relying on the government's arguments in those cases would be, as it was here, manifestly unfair, highly prejudicial and inaccurate.[2] The Court compounded this error by simply ignoring one of Respondent's core arguments made in the status conference—that Petitioner's entry into the United States under a

---

[2] Respondents' request for the status conference transcript from September 25, 2025 is currently pending. Upon receipt, Respondents can submit a supplemental brief with specific references to the transcript.

grant of humanitarian parole stands apart from the recent habeas cases heard in the District of Massachusetts that concerned individuals who had entered the United States illegally and after apprehension, were released into the United States on Orders of Recognizance pursuant to 8 U.S.C. § 1226(a).[3] Instead, the Court noted only that Respondents identified "the existence of the FBI tip and the fact that Shinwari arrived in the United States less than a year before he was arrested." Order at 4. The Court found these two grounds insufficient to distinguish the case and the order made no reference at all to the significance of Petitioner's entry under a grant of humanitarian parole on what detention authority applies.

Notably, the Court cited *Oliveira Gomes v. Hyde*, No. 25-cv-11571-JEK, 2025 WL 1869299 (D. Mass. July 7, 2025), in support of rejecting the government's arguments. Order at 5. But *Gomes* supports the government's position here, finding that a terminated grant of humanitarian parole and arrest following release on recognizance under § 1226(a) are "entirely different" circumstances for determining which detention authority applies. *See* 2025 WL 1869299 at *7–8. In that case, the Court found §1226(a) applied *because* the petitioner there had not been granted humanitarian parole under 1182(d)(5) that was later revoked or expired, but had originally been arrested and released on an order of recognizance under § 1226(a). *Id*. Relying on *Gomes* as "reasoning [that] squarely rejects the respondents' legal position" that a grant of humanitarian parole should lead to a different analysis, Order at 5, was clear error.

Other courts in this district align with *Gomes*. *See, e.g., Martinez v. Hyde*, 2025 WL 2084238, at *3 (D. Mass., July 24, 2025) ("Non-citizens fictively paroled into the United States [pursuant to 8 U.S.C. § 1182(d)(5)] are in a fundamentally different and less protected position than 'those who are within the United States after an entry, irrespective of its legality.'") (quoting

---

[3] *Id*.

4

*Leng May Ma v. Barber*, 357 U.S. 185, 187 (1958)); *id*. (citing *Dep't of Homeland Sec. v. Thuraissigiam*, 591 U.S. 103, 140 (2020) (holding that non-citizen who had not "effected an entry" into the United States had not acquired constitutional protections) (quoting *Zadvydas v. Davis*, 533 U.S. 678, 693 (2001)).[4] The Court's determination that it could ignore the government's oral argument, pick a *different* argument as the government's position (that the government did not press), and then issue an order rejecting that position without further review is erroneous and prejudicial, and truly antithetical to the fair administration of justice. This error alone warrants the Court's reconsideration of its order.

Additionally, the Court's reliance on the documents Respondents produced under a *sua sponte* discovery order in just four days was also erroneous and prejudicial. The Court references a single document from the time of Petitioner's arrest noting Petitioner was not subject to mandatory detention "per statutes and allegations" as evidence of "DHS's own view at the time of Shinwari's arrest." Order at 6 n.4. Respondents should have the opportunity to provide context for this document and to present an argument that what appears to be one ICE officer selecting the wrong pre-filled dropdown menu option on one form is not adequate to overcome a duly enacted statute. *See Romero v. Bondi*, No. 1:25-CV-993 (RDA/WEF), 2025 WL 2490659, at *2–3 (E.D. Va. July 2, 2025) (the erroneous issuance of a Notice of Custody Determination "cannot change [p]etitioner's status [as an applicant for admission] under the law."). Furthermore, ICE issued Petitioner an I-860, Notice and Order of Expedited Removal at the time of his arrest. *See* Sealed Documents Part 2, [PDF pages] 89-90. To the extent that an ICE officer's "view" of whether an

---

[4] The other cases the Court relies on, *Sampiao v. Hyde*, No. 25-cv-11981-JEK, 2025 WL 2607924 (D. Mass. Sept. 9, 2025), and *Romero v. Hyde*, No. 25-cv-11631-BEM, 2025 WL 2403827 (D. Mass. Aug. 19, 2025), both involved petitioners arrested and released on orders of recognizance under § 1226 before being re-arrested later and subjected to mandatory detention under §1225. Neither had entered the United States on a grant of humanitarian parole under 1182(d)(5) that was later terminated.

alien is subject to mandatory detention is relevant, the I-860 is objectively stronger evidence that DHS considered Petitioner an applicant for admission subject to § 1225(b) expedited removal and mandatory detention authorities.

This same reasoning applies to the I-200 Warrant for Arrest issued contemporaneously to the I-860 Order of Expedited Removal. The two documents are functionally incompatible and so cannot be relied on to support a view of detention authority one way or the other. The INA irrefutably controls, and it says an alien granted parole has not effected an entry, and when that parole expires or is terminated, the alien is restored to the status of seeking admission. *See* Respondent's Opp., ECF No. 8, at 3-5; 8 U.S.C. § 1182(d)(5)(A); 8 C.F.R. § 1.2; 8 C.F.R. § 212.5(e)(2)(i); *Thuraissigiam*, 591 U.S. at 139; *Jennings v. Rodriguez*, 583 U.S. 281, 297 (2018).

Lastly, the Court's determination that Petitioner developed due process rights than an arriving alien otherwise lacks during his time working for the U.S. military in Afghanistan, Order at 6 n.6, was not an issue raised by either party or the Court and appears to have no support in the law. Rather, "the claim that extraterritorial aliens are entitled to rights under the Fifth Amendment—which speaks in the relatively universal term of 'person'—has been emphatically rejected." *U.S. v. Verdugo-Urquidez*, 494 U.S. 259, 260 (1990) (citing *Johnson v. Eisentrager,* 339 U.S. 763, 784 (1950)). Otherwise, "aliens with no attachment to this country might bring actions for damages to remedy claimed [constitutional] violations . . . in foreign countries or in international waters, and Members of the Executive and Legislative Branches would be plunged into a sea of uncertainty[.]" *Id*. at 261. Instead, "aliens receive [constitutional] protections when they have come within the territory of, *and* have developed substantial connections with, this country." *Id*. (emphasis added) (citing *Plyler v. Doe,* 457 U.S. 202, 212 (1982)).

Where the Court based its determination that Petitioner is entitled to a bond hearing on a violation of due process rights Petitioner developed from outside the United States, *see* Order at 6 n.5 ("this determination alone warrants allowing his petition"), the Court's finding is clearly prejudicial. Because Petitioner did not raise this claim in either his habeas petition or his proposed amended habeas petition, Respondents have had no opportunity to offer an argument in opposition.

Despite the strong improprieties with the Court's order as expressed herein, Respondents have complied with the order and provided Petitioner a bond hearing in immigration court on October 9, 2025. *See* ECF No. 37 at 7. However, for all of the reasons stated herein, Respondents respectfully ask the Court to grant this motion for reconsideration, reverse the October 3 Order and permit Respondents to submit complete briefing in opposition to Petitioner's amended petition and in response to the Court's inquiries as to whether Petitioner is subject to detention pursuant to § 1225(b) or 1226(a), including whether an individual can accrue dormant constitutional rights from abroad.

## Request for Stay Pending Shutdown

At the end of the day on September 30, 2025, the appropriations act that had been funding the Department of Justice expired and those appropriations to the Department lapsed. The same is true for the majority of other Executive agencies, including the federal Respondents. The Department does not know when such funding will be restored by Congress. Absent an appropriation, Department of Justice attorneys and employees of the federal Respondents are prohibited from working, even on a voluntary basis, except in very limited circumstances, including "emergencies involving the safety of human life or the protection of property." 31 U.S.C. § 1342.

Therefore, if the Court is inclined to grant Respondents' Motion for Reconsideration and order further briefing, undersigned counsel for the Department of Justice requests a stay of any briefing deadlines until Congress has restored appropriations to the Department.

If this motion for a stay is granted, undersigned counsel will notify the Court as soon as Congress has appropriated funds for the Department. The Government requests that, at that point, all existing deadlines for the parties be extended commensurate with the duration of the lapse in appropriations – i.e., each deadline would be extended by the total number of days of the lapse in appropriations.

Where Respondents have already complied with the Court's order and provided Petitioner with a bond hearing pursuant to § 1226(a) before an immigration judge, Petitioner will not be prejudiced by the delay. On October 9, 2025, an immigration judge ordered a $15,000 bond. Petitioner posted bond and was released on October 14, 2025.

Therefore, although Respondents greatly regret any disruption caused to the Court and the other litigants, the Government hereby moves for a stay of any new briefing deadlines in this case the Court may order upon reconsideration until Department of Justice attorneys are permitted to resume their usual civil litigation functions. Per Local Rule 7.1(a)(2), Respondents have conferred in good faith in an attempt to resolve or narrow the issues but Parties were unable to reach an agreement as to the relief requested by the Motion. Petitioners are opposed to this Motion.

Dated: October 15, 2025                                  Respectfully submitted,

                                                         BRETT SHUMATE
                                                         Assistant Attorney General
                                                         Civil Division

                                                         RUTH ANN MUELLER
                                                         Acting Assistant Director

JAMES J. WALKER
Senior Litigation Counsel

*s/ Justine G. Ulanday*
JUSTINE G. ULANDAY (CA 343949)
Trial Attorney
U.S. Department of Justice, Civil Division
Office of Immigration Litigation
P.O. Box 868, Washington, DC 20044
Telephone: (202) 532-3510
Email: Justine.Ulanday@usdoj.gov

*ATTORNEYS FOR RESPONDENTS*

## CERTIFICATE OF SERVICE

I hereby certify that this document filed through the ECF system on October 15, 2025, will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF).

Respectfully Submitted,

s/ *Justine G. Ulanday*
JUSTINE G. ULANDAY (CA 343949)
Trial Attorney
U.S. Department of Justice, Civil Division
Office of Immigration Litigation
District Court Section