## UNITED STATES DISTRICT COURT
## DISTRICT OF MASSACHUSETTS

ZIAULHAQ SHINWARI,

      Petitioner,

v.

PATRICIA HYDE, *et al.*,

      Respondents.

HON. J. LEO T. SOROKIN

No. 25-12021-LTS

## RESPONDENTS' PROPOSED MEMORANDUM OF LAW IN OPPOSITION TO AMENDED PETITION FOR WRIT OF HABEAS CORPUS AND REQUEST FOR INJUNCTIVE RELIEF

Respondents Patricia Hyde, Field Office Director, Josh McDonald Jr., Sheriff of Plymouth County, Michael Krol, HSI New England Special Agent in Charge, Joseph B. Edlow, Director of U.S. Immigrations and Customs Enforcement, and Kristi Noem, U.S. Secretary of Homeland Security, by and through undersigned counsel, submit this proposed Memorandum Of Law in Opposition to Petitioner Ziaulhaq Shinwari's Amended Petition For Writ Of Habeas Corpus And Request For Injunctive, ECF No. 19, in accordance with the Court's October 20, 2025 Order, ECF No. 38.

## INTRODUCTION

The Amended Petition alleges that Petitioner's detention in civil immigration custody is a violation of his Fifth Amendment Due Process rights, as well as the Administrative Procedure Act (APA), because he has not received an individualized Section 1226(a) bond hearing before an immigration judge. However, the Amended Petition fails to retort the fact that an alien present in the United States through a grant of humanitarian parole remains an applicant for admission for

the length of time that his parole is in place and, upon the expiration or revocation of that parole, the alien is subject to the same expedited removal and mandatory detention scheme as any alien standing at the border. Petitioner's presence in the country clearly, per the statutory construction of 8 U.S.C. § 1182(d)(5)(A), *never* amounted to an "admission" that created due process rights beyond those Congress afforded by statute in 8 U.S.C. § 1225. Because Petitioner fails to establish that his detention is a violation of his Due Process rights, as well as raises an APA claim that does not sound in habeas, the Amendment Petition should be dismissed in its entirety.

## BACKGROUND

### I.    Legal Background

An applicant for admission is defined as "[a]n alien present in the United States who has not been admitted or who arrives in the United States." 8 U.S.C. § 1225(a)(1). An applicant for admission is subject to inspection by immigration officials and carries the burden of demonstrating his admissibility into the United States. *See id*. at § 1225(a)(3); 8 C.F.R. § 235.1(f). By regulation, an arriving alien is "an applicant for admission coming or attempting to come into the United States at a port-of-entry . . . ." 8 C.F.R. § 1.2. "An arriving alien remains an arriving alien even if paroled [], and even after any such parole is terminated or revoked." *Id*. The Secretary of Homeland Security "may . . . in [her] discretion parole" an "alien applying for admission," and such a parole is done "temporarily under such conditions as [the Secretary] may prescribe [and] only on a case-by-case basis for urgent humanitarian reasons or significant public benefit." 8 U.S.C. § 1182(d)(5)(A). Parole, however, is not an "admission" to the United States. 8 U.S.C. §§ 1101(a)(13)(B), 1182(d)(5)(A).

As explained by the Supreme Court, "aliens who arrive at ports of entry—even those paroled elsewhere in the country for years pending removal—are 'treated' for due process purposes 'as if stopped at the border.'" *See Dep't of Homeland Security v. Thuraissigiam*, 591 U.S.

103, 139 (2020) (quoting *Shaughnessy v. United States ex rel. Mezei*, 345 U.S. 206, 215 (1953); *see also Leng May Ma v. Barber*, 357 U.S. 185, 188-90 (1958). This is because an applicant for admission, even if paroled into the United States, "remain[s] constructively detained at the border, i.e. legally unadmitted, while their status is being resolved by immigration officials." *Ibragimov v. Gonzales*, 476 F.3d 125, 134 (2d Cir. 2007); *Duarte v. Mayorkas*, 27 F.4th 1044, 1059 (5th Cir. 2022) (Explaining that "a paroled alien is legally equivalent to an alien that is held in custody at the border while their application for admission is processed.").

Parole may be terminated "when the purposes of such parole shall, in the opinion of the Secretary of Homeland Security, have been served." 8 U.S.C. § 1182(d)(5)(A). By regulation, ICE can terminate parole upon a determination that the purpose of parole has been accomplished or upon a finding that "neither humanitarian reasons nor public benefit warrants the continued presence of the alien in the United States". 8 C.F.R. § 212.5(e)(2)(i). ICE's issuance of a charging document setting forth the basis of inadmissibility to the United States constitutes written notice of termination of parole. *Id.*; *see Matter of Arambula-Bravo*, 28 I. & N. Dec. 388, 395 (BIA 2021) ("A charging document presumptively terminates parole because an intent to remove a noncitizen necessarily reflects a determination that the continued presence of that individual is no longer warranted."). After parole is terminated, "the alien shall forthwith return or be returned to the custody from which he was paroled and thereafter his case shall continue to be dealt with in the same manner as that of any other *applicant for admission* to the United States." 8 U.S.C. § 1182(d)(5)(A) (emphasis added). Once parole is terminated, "[a]ny further inspection or hearing shall be conducted under section 235 [8 U.S.C. § 1225] or 240 [8 U.S.C. § 1229a] of the Act". 8 C.F.R. § 212.5(e)(2)(i). The grant of parole and its termination is committed to the broad discretion of the Secretary. As the First Circuit has explained, "[t]he scope of the parole authority is close to

plenary." *Amanullah v. Nelson*, 811 F.2d 1, 5-6 (1st Cir. 1987) (Congress' grant "of statutory authority [is] particularly sweeping in the context of parole.").

An alien who arrives at a port of entry and is subsequently paroled into the United States is subject to expedited removal because he retains his status as an alien "arriving in" the United States. 8 C.F.R. § 1.2. ("An arriving alien remains an arriving alien even if paroled pursuant to section 212(d)(5) of the Act, and even after any such parole is terminated or revoled."); s*ee also Obregon-Calcedo v. Thompson*, No. CV-25-1048 (KMW), 2025 WL 1805464, at *2 (D.N.J. June 30, 2025) (Explaining "[t]hat [p]etitioner was paroled into the United States thus was not a legal entry, and [p]etitioner is considered as if he remained an applicant for admission at the border, legally subject to a finding of inadmissibility and the issuing of an expedited order of removal."). In some circumstances, an immigration official may determine that a noncitizen qualifies for full removal proceedings under Section 1225(b)(2), and also for expedited removal proceedings under Section 1225(b)(1). When that happens, "[t]he government has discretion to place noncitizens in standard removal proceedings even if the expedited removal statute could be applied to them." *See Flores v. Barr*, 934 F.3d 910, 916-17 (9th Cir. 2019) (*citing Matter of E-R-M- & L-R-M-*, 25 I. & N. Dec. 520, 524 (BIA 2011)); *see also Matter of M-S-*, 27 I. & N. Dec. 509, 510 (A.G. 2019) (stating "DHS may place him in either").

## II.    Procedural Background

Petitioner filed a Motion for Leave to File First Amended Complaint, ECF No. 19, on August 21, 2025, which was granted by the Court in a minute order on August 22, 2025. Petitioner is a native and citizen of Afghanistan who was paroled into the United States on or about October 8, 2024. Charpentier Decl. ¶¶ 7, 9, ECF No. 8-1. On July 16, 2025, Petitioner was served with a Notice and Order of Expedited Removal charging him with inadmissibility under 8 U.S.C. § 1182(a)(7)(A)(i)(I) for not possessing a valid entry document. *Id*. ¶ 12. This act subjected him to

immediate removal under 8 U.S.C. § 1225. Because Petitioner claimed a fear of return to Afghanistan, he was placed into full removal proceedings pursuant to 8 U.S.C. § 1229a. ECF No. 19-2 ¶¶ 44, 48.

## LEGAL STANDARD

It is axiomatic that "[t]he district courts of the United States . . . are courts of limited jurisdiction. They possess only that power authorized by Constitution and statute." *Exxon Mobil Corp. v. Allapattah Servs., Inc.*, 545 U.S. 546, 552 (2005) (internal quotations omitted). A habeas petitioner bears the burden to establish entitlement to a writ of habeas corpus by proving that his custody violates the Constitution, laws, or treatises of the United States. *See* 28 U.S.C. § 2241(c)(3); *Espinoza v. Sabol*, 558 F.3d 83, 89 (1st Cir. 2009) ("The burden of proof of showing deprivation of rights leading to an unlawful detention is on the petitioner.").

## ARGUMENT

Respondents incorporate by reference the arguments presented in the Opposition to Petition for Writ of Habeas Corpus, ECF No. 8, Motion for Reconsideration, ECF No. 38, and Renewed Motion for Reconsideration, filed concurrently herein, as they are relevant to the Amended Petition.[1]

Respondents present the below as additional argument in response to the Court's questioning at the September 25, 2025, status conference regarding "the extent to which Shinwari's due process claim echoes those raised in a series of other cases that recently required the Court to analyze which of two relevant immigration-detention statutes applies." Order at 4. The Court acknowledged Respondents had disagreed generally that the series of cases the Court referred to

---

[1] Respondents note that there is overlap of the arguments in the two briefs due to them being filed concurrently.

apply here because they had not been provided the opportunity to offer "any developed legal argument," but then noted "respondents' legal position has been developed in other cases, so the Court is familiar with it." *Id.* at 4 n.1. But in ordering Petitioner a bond hearing, the Court then failed to address the primary argument Respondents advanced at the status conference: which is Petitioner's status as a humanitarian parole recipient sets him apart entirely from the cases arising from the re-arrest of aliens who initially entered the country unlawfully and were released pursuant to § 1226 authority. Even the Court's own prior decision that it relies on here is distinguished on this precise circumstance:

> Garcia arrived in the United States in late March 2024, crossing the border between Mexico and California without a visa or other valid entry document. [. . .] She promptly encountered and was arrested by Border Patrol agents. [. . .] On April 1, 2024, the Department of Homeland Security ("DHS") issued two documents: a Notice to Appear, which initiated removal proceedings against Garcia under 8 U.S.C. § 1229a and required her appearance before an immigration judge in Boston in May 2025, . . .; and an Order of Release on Recognizance, which required Garcia to comply with certain conditions pending the resolution of her removal proceedings[]. . . . The latter document specifies that Garcia was released "in accordance with section 236 of the Immigration and Nationality Act," or 8 U.S.C. § 1226.

*Garcia v. Hyde*, No. 25-cv-11513-LTS (D. Mass. July 14, 2025) (Sorokin, J.) ECF No. 21 at 1-2. This Court found that the government's representation that Garcia was properly detained pursuant to § 1225(b) "is directly contradicted by multiple documents in the record which uniformly describe Garcia's detention as based on 8 U.S.C. § 1226." *Id.* at 3 n.1. The evidence in this case is nearly uniform in the opposite direction: Petitioner Shinwari was paroled into the country rather than entering unlawfully, so was never released on recognizance nor subject to a Notice to Appear citing § 1226 authority for his removal. While an ICE officer drafted an Arrest Warrant citing § 1226 months after Petitioner's parole, that warrant stands alone among a complete record pointing to § 1225 authority for Petitioner's arrest, detention, and removal, including the Order of Expedited Removal presented to Petitioner along with the Arrest Warrant.

The distinction matters because the parole statue in conjunction with the expedited removal statute deliberately provides less protection to an "arriving alien" "seeking admission" than to an alien subject to removal. *See Martinez v. Hyde*, 792 F. Supp. 3d 211, 216 (D. Mass. 2025) (holding "[n]on-citizens fictively paroled into the United States are in a fundamentally different and less protected position than 'those who are within the United States after an entry, irrespective of its legality.'") (quoting *Leng May Ma v. Barber*, 357 U.S. 185, 187 (1958)). Thus, Petitioner's contention that he cannot be subject to mandatory detention as an applicant for admission because he previously entered the United States on parole, Amend. Pet. ¶ 59, is entirely without merit and contradicted by the plain language of the parole statute:

> [S]uch parole of such alien shall not be regarded as an admission of the alien and when the purposes of such parole shall, in the opinion of the Secretary of Homeland Security, have been served the alien shall forthwith return or be returned to the custody from which he was paroled and thereafter his case shall continue to be dealt with in the same manner as that of any other applicant for admission to the United States.

*Id.* at ¶ 59 (quoting 8 U.S.C. § 1182(d)(5)(A)); *see also* 8 C.F.R. § 1.2 ("[a]n arriving alien remains an arriving alien even if paroled pursuant to section 212(d)(5) of the Act, and even after any such parole is terminated or revoked."); *Amanullah*, 811 F.2d at 5 (parole is not regarded as an admission or entry); *United States v. Kavazanjian*, 623 F.2d 730, 737 (1st Cir. 1980) ("no entry occurred when the aliens were paroled pending disposition of their asylum requests."); *Martinez*, 792 F. Supp. 3d at 216 (upon termination of parole, "it was as if [the parolee] had never entered the country at all.").

The Supreme Court was clear in *Thuraissigiam* that an applicant for admission, even if paroled into the country like Petitioner, "has only those rights regarding admission that Congress has provided by statute." 591 U.S. at 139–40. All applicants for admission, "even those paroled

elsewhere in the country for years pending removal", *id.*, "have no entitlement to procedural rights other than those afforded by statute." *Id.* at 107; *Amanullah*, 811 F.2d at 9.

Further, the Supreme Court and the circuit courts have long recognized that aliens paroled into the United States are legally in the position of aliens standing at the border, regardless of the duration of their parole. *See e.g., Leng May Ma v. Barber*, 357 U.S. 185, 188–91 (1958); *Kavazanjian*, 623 F.2d at 737; *Ibragimov v. Gonzales*, 476 F.3d 125, 134 (2d Cir. 2007); *Duarte v. Mayorkas*, 27 F.4th 1044, 1059 (5th Cir. 2022). "This is why a parolee normally fits the regulatory definition of an 'arriving alien'—for legal purposes, the parolee is a 'an applicant for admission coming or attempting to come into the United States at a port-of-entry' even if, in actuality, a paroled alien has already physically come into the United States." *Duarte,* 27 F.4th at 1059-60 (citation omitted). And in *Jennings v. Rodriguez*, 583 U.S. 281, 303 (2018), the Supreme Court held that an individual detained under Section 1225(b) remains detained under that provision "throughout the completion of applicable proceedings," which in Petitioner's case are his Section 1229a removal proceedings.

Aside from the Supreme Court and the circuit courts, including the First Circuit, making it clear that a parolee is considered an arriving alien subject to mandatory detention with no additional due process rights, Petitioner's assertion that he is detained under Section 1226(a) is not supported by any of the recent District of Massachusetts cases the court relied on.

While not a conclusive list, the cited cases, and others like them, involve individuals who were detained under Section 1226, released under Section 1226, and later detained under Section 1225. *See, e.g.*; *Doe v. Moniz*, No. 1:25-CV-12094-IT, 2025 WL 2576819 (D. Mass. Sept. 5, 2025) ("Respondents do not dispute that when DHS first detained Petitioner in December 2021, the detention was pursuant to Section 1226."); *Gomes v. Hyde*, No. 1:25-CV-11571-JEK, 2025 WL

1869299 (D. Mass. July 7, 2025) (Gomes was "conditionally paroled . . . into the United States on an Order of Recognizance issued under Section 1226(a)….[and] was arrested on a warrant issued pursuant to Section 1226"); *Sampiao v. Hyde*, No. 1:25-CV-11981-JEK, 2025 WL 2607924 (D. Mass. Sept. 9, 2025) ("In October 2021, CBP officers arrested Sampiao on a warrant issued pursuant to 8 U.S.C. § 1226 and then released him on an Order of Recognizance under that same statute."); *Romero v. Hyde*, No. CV 25-11631-BEM, 2025 WL 2403827 (D. Mass. Aug. 19, 2025) ("Pending her initial removal proceedings, Petitioner was arrested and released under section 1226."); *Martinez v. Hyde*, 792 F. Supp. 3d 211 (D. Mass. 2025) ("Petitioner's Order of Release does not indicate that she was examined or detained under section 1225 but instead explicitly premises her release on section 1226"). As explained above, Petitioner's arrest and detention here is factually and legally distinct, and the outcome should reflect that distinction.

One recent case, *Cordero v. Hyde*, No. 1:25-CV-12802-IT, 2025 WL 3043415 (D. Mass. Oct. 31, 2025), granted a temporary restraining order (TRO) to a petitioner who was detained after a humanitarian parole revocation, finding he was likely to succeed on the merits that he was detained under Section 1226 because "there is no dispute that [Petitioner] had been residing in the United States for some time." (internal quotations omitted). Notably, the government did not file an opposition to the habeas petition or TRO motion that argued any detention authority. *Id*. at *5. Thus, the court had no occasion to analyze the correct statute. A second recent case also correctly found that "parole under section 1182(d)(5)(A) is expressly "not [to] be regarded as an admission" to the United States" but still found that petitioner, an individual paroled for nearly four years before his re-arrest, possessed a due process right to a bond hearing pursuant to the balancing test in *Mathews v. Eldridge*, 424 U.S. 319 (1976). *See Rincon v. Hyde*, No. CV 25-12633-BEM, 2025 WL 3122784 (D. Mass., Nov. 7, 2025). But the court made no specific findings beyond asserting

the primacy of "[f]reedom from imprisonment" as the heart of due process; and failed to engage with Congress's clear statutory intent to detain arriving aliens. *See id*. at *9. The court's broad, undeveloped reasoning would effectively end mandatory detention under any statute. Thus, neither case provides any legal authority for finding entitlement to a bond hearing here.

In fact, another new case in the District of Massachusetts correctly recognizes the faults in *Cordero* and *Rincon*'s holdings. *See Luna Banegas v. McDonald*, No. 1:25-cv-13161-NMG, 2025 WL 3251395 (D. Mass. November 21, 2025). In *Luna Banegas*, the petitioner was detained pursuant to Section 1225 expedited removal, granted 1182(d)(5)(A) parole, and was later re-detained. *Id*. at *1. While petitioner argued his detention converted to Section 1226(a), the court held that "[t]o the extent petitioner argues that his parole after arrival placed him under § 1226(a) rather than § 1225(b), he is mistaken." *Id*. at *3. Thus, the court's holding, which engages with the statutory text of § 1182(d)(5)(A), holds that an individual who has their humanitarian parole revoked reverts to the status in which they existed before the grant of parole, which in *Luna Banegas* and in this present litigation, is that of an arriving alien applying for admission subject to mandatory detention. *See id*.

Thus, Petitioner's belief that he was converted to Section 1226 detention authority when ICE rescinded his Order of Expedited Removal and placed him into § 1229a removal proceedings is incorrect. Amend. Pet. at 1 ("Respondents have cynically taken internally incoherent position."); *see Luna Banegas*, 2025 WL 3251395 at *2 ("nothing in the statutory scheme indicates that an alien in § 1229 proceedings is to be detained under § 1226."). As explained previously, authority for Petitioner's detention does not change based on his placement in full removal proceedings. *See* ECF No. 8 at 5-7. Ultimately, the statutory construction is clear that once an individual's humanitarian parole is revoked, he is considered an alien seeking admission subject to mandatory

detention under Section 1225 during the pendency of removal proceedings. And as an applicant for admission, he simply does not accrue due process rights while awaiting a decision on whether he may be admitted or not. *Thuraissigiam*, 591 U.S. at 107.

## <u>CONCLUSION</u>

For the foregoing reasons, the Court should deny the Amended Petition and find that Petitioner was properly detained pursuant to 8 U.S.C. § 1225(b).


DATED: November 26, 2025                        Respectfully Submitted,

                                                BRETT A. SHUMATE
                                                Assistant Attorney General
                                                Civil Division

                                                JAMES J. WALKER
                                                Senior Litigation Counsel

                                                /s/ *Jaime A. Scott*
                                                JAIME A. SCOTT
                                                DC Bar No. 90027182
                                                Trial Attorney
                                                U.S. Department of Justice
                                                Civil Division
                                                Office of Immigration Litigation
                                                P.O. Box 868, Ben Franklin Station
                                                Washington, DC 20044
                                                Tel: (202) 305-3620
                                                Email: Jaime.A.Scott@usdoj.gov

                                                *Attorneys for Respondents*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that this document filed through the ECF system on November 26, 2025 will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF).

Respectfully submitted,

*/s/ Jaime A. Scott*
JAIME A. SCOTT
Trial Attorney
United States Department of Justice
Civil Division
Office of Immigration Litigation

*Attorney for Respondents*